Meredith A. Jones-McKeown, Bar No. 233301
MJonesMcKeown@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
Telephone:  415.344.7000
Facsimile:  415.344.7050

Attorneys for Petitioner
Lendlease (US) Construction Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LENDLEASE (US) CONSTRUCTION INC.,<br><br>                    Petitioner,<br><br>          v.<br><br>CHINA OCEANWIDE HOLDINGS LIMITED,<br><br>                    Respondent | Case No.<br><br>**VERIFIED PETITION TO CONFIRM ARBITRATION AWARD**<br><br>**(9 U.S.C. § 9)** |

Petitioner Lendlease (US) Construction Inc. ("Lendlease") petitions this Court for an order confirming the Arbitration Award dated November 24, 2020 (the "Award"), and entering judgment as specified therein in the amount of $40,348,987.22, plus interest on that amount from the time the award was entered through the date of the issuance of the judgment and continuing thereafter until fully paid as specified in the Award, together with costs and attorneys' fees incurred to confirm the Award, against respondent China Oceanwide Holdings Limited ("Respondent Oceanwide").  A true and correct copy of the Award is attached hereto as **Exhibit 1**.

This is a summary proceeding pursuant to 9 U.S.C. § 13 under which very limited issues are before this Court.

## THE PARTIES

1.      Lendlease is a Florida corporation with its principal place of business located at 200 Park Avenue, New York, New York.  Lendlease is authorized to do business in California.

2.      Respondent Oceanwide is a company organized and existing under the laws of Bermuda with a registered office at 64/F Bank of China Tower, 1 Garden Road, Hong Kong.

## JURISDICTIONAL ALLEGATIONS

3.      There is complete diversity of citizenship between the parties, and more than $75,000, exclusive of interest and costs, is at stake in this controversy, and this Court has jurisdiction of this matter under 28 U.S.C. § 1332(a)(1).

4.      The Federal Arbitration Act, 9 U.S.C. § 9, applies to this Petition and this Court has personal jurisdiction over Respondent Oceanwide because Respondent Oceanwide consented to jurisdiction in the United States District Court in the Central District of California in the Parent Company Guarantee dated March 5, 2020 between Lendlease and Respondent Oceanwide (the "PCG").  Respondent Oceanwide has

also done and transacted business in California, including participating in the Arbitration hearing, resulting in the Award.

5.      Pursuant to 9 U.S.C. § 9, venue is proper in this judicial district because the PCG specified this judicial district as the proper venue for any motion concerning the Award.

## ARBITRATION AGREEMENT GOVERNING AND GIVING RISE TO THIS DISPUTE

6.      On March 5, 2020, Lendlease and Respondent Oceanwide entered into the PCG, under which Respondent Oceanwide guaranteed payment of $100,000,000 to Lendlease.   Of this amount, $54,440,000 would be paid in three installments pursuant to a schedule attached to the PCG between April and June 2020 (the "Funding Schedule Payments").   A true and correct copy of the PCG is attached hereto as **Exhibit 2**.

7.      Following the execution of the PCG, Respondent Oceanwide was required to make the Funding Schedule Payments, each by a date certain.   However, in the Award, the Arbitrator determined Respondent Oceanwide did <u>not</u> make the payments as required, thereby breaching of its obligations.[1]   Instead, it made three partial payments that were late and not in full, and then failed to make any further payments.   In total, of the $54,440,000 due by June 15, 2020 under the Funding Schedule, only a total of $16,000,000 in payments were made by Respondent Oceanwide, and the balance of $38,440,000 remained outstanding.

8.      The PCG contemplated two separate arbitrations in the event of disputes between the parties.   First, in the event Oceanwide failed to make the Funding Schedule Payments, the parties would participate in an expedited dispute resolution proceeding administered by the American Arbitration Association pursuant to its Fast Track Construction Industry Rules, under which "the sole issue to be decided by the

---

[1] Exhibit 1.

-3-

Arbitrator will be whether payment of the Funding Schedule Payments was made in accordance with the Guarantee." (Exhibit 2, ¶ 13(a)(i)(e)) (the "Fast Track Arbitration.") Under this protocol, the Fast Track Arbitration was required to be complete within fourteen (14) days of filing. Second, in the event of a dispute regarding the amounts other than the Funding Schedule Payments guaranteed under the PCG, the parties would participate in a more comprehensive arbitration also administered by the American Arbitration Association (the "Separate OW-California Arbitration"). The Award before this Court concerns the first, most expedited track, and concerns only the issue of whether the required payments were made under the PCG.

### PROCEDURAL HISTORY OF ARBITRATION

9.     On October 13, 2020, Lendlease commenced the arbitration by filing a demand for arbitration with accompanying declarations (collectively, the "Demand"). Lendlease sought the immediate enforcement of Respondent Oceanwide's obligation to make the Funding Schedule Payments.

10.     The Arbitration was held before John Paige Carpenter of the American Arbitration Association, pursuant to its Construction Industry Fast Track Arbitration Rules, as modified by the terms of the PCG.

11.     On October 26, 2020, Respondent Oceanwide filed its Answer to Claimant's Demand for Arbitration of Breach of Guarantee ("Answer"). In that pleading, Respondent Oceanwide stated, among other things, "[f]or the purposes of this Arbitration, [Respondent Oceanwide] does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand." (Answer at 4). Accordingly, the *prima facie* elements of Lendlease's Demand were undisputed and supported by competent evidence. However, through its answer, Respondent Oceanwide sought to expand the jurisdiction of the Arbitrator beyond the streamlined issue specifically mandated by the PCG to encompass two other issues: "first, [Respondent Oceanwide] sought an accounting of the Funding Schedule Payments

to determine how much, on a subcontractor-by-subcontractor basis, remains due and owing.  Second, Oceanwide argued that Lendlease "should be required to establish that it maintained a valid construction license at all times during the Project." (Award, Ex. 1, 2:21-25, internal citations and marking omitted).

12.    On October 28, 2020, Lendlease filed a motion to confirm the limited scope of the Arbitrator's jurisdiction ("Lendlease Motion").  Lendlease argued that both of these issues went beyond the scope of the Arbitrator's jurisdiction as defined in the arbitration demand.  Regarding the licensing issue, Lendlease noted that because the PCG is a financial instrument and not a construction contract, a showing of licensure is not required and was not a prima facie element of Lendlease's claims against Respondent Oceanwide.  Respondent Oceanwide filed its opposition to that motion on October 29, 2020, and Lendlease filed a reply in support of the motion on October 30, 2020.

13.    The Arbitrator granted the Lendlease Motion on October 30, 2020, holding that the scope of the Arbitration was limited to the sole issue of whether Respondent Oceanwide had made the Funding Schedule Payments in accordance with the PCG.  The Arbitrator found "the issues raised by Oceanwide concerning subcontractor payment and contractor licensing were construction-related issues and outside the jurisdiction of the Arbitrator under the terms of the PCG, and therefore not subject to this Arbitration."  (Award, Ex. 1, 3:3-6)  The Arbitrator also found that Respondent Oceanwide's request for a finding on licensure was inappropriate because:

> "This case is not a construction case. Construction issues including construction contract licensure (which Claimant Lendlease demonstrates has been in place continuously based on the Contractor's State License Board's License Detail, attached as Exhibit A to the Supplemental Declaration of Joe Wathen, see also Exhibit F, granting a

-5-

90-day extension to the 90-day period for replacing a qualifier from the CSLB dated 12/21/18 and Exhibit G letter from CSLB confirming Mr. Wathen passing the necessary exam dated 1/11/19), can be raised by nonparty Oceanwide California under the dispute process provided for in the Parent Company Guaranty and the Construction Contract where it is a party [i.e., in the Separate OW-California Arbitration]." (Award, Ex. 1, ¶ 4.)

14.   Respondent Oceanwide then had the opportunity to submit evidence in the arbitration, but declined to submit any additional evidence. (Award, Ex. 1, 7:7-10).

15.   Based on the evidence submitted, the Arbitrator determined "Oceanwide currently owes $38,440,000 under the terms of the Parent Company Guarantee's Funding Schedule." (Award, Ex. 1, 6:16-18.) On November 24, 2020, the Arbitrator issued his final award, finding:

"The Arbitrator finds and concludes that Lendlease has satisfied its burden of proof on each element on its claim for Oceanwide's breach of the Parent Company Guarantee. Specifically, Lendlease has demonstrated with sufficient evidence, which Oceanwide does not dispute, that Lendlease and Oceanwide entered into the Parent Company Guarantee and that Lendlease has fully performed all of the terms and conditions required on its part to be performed under the Parent Company Guarantee. Lendlease further proved that Oceanwide breached the Parent Company Guarantee by failing to adhere to the agreed upon Funding Schedule by: (1) failing to pay its $10 million April 15, 2020 Funding Schedule Payment on time;

-6-

(2) failing to pay its $20 million May 15, 2020 Funding Schedule Payment in full and on time; and (3) failing to pay its $24,440,000 million June 15, 2020 Funding Schedule Payment in full and on time. The exhibits to the Walsh Declaration further confirm that Lendlease provided notice to Oceanwide of its defaults under the Parent Company Guarantee, although the Parent Company Guarantee itself does not require such notice. And it is undisputed that as a direct and proximate result of Oceanwide's breach of the Parent Company Guarantee, Lendlease is owed $38,440,000." (Award, Ex. 1, 7:18-8:4).

16.     The Arbitrator also determined Lendlease was entitled to pre-judgment and post-interest at the rate of 10% per annum, determining the amount of interest that accrued through November 12, 2020 was $1,746,849.81, and that interest would accrue thereafter at the rate of $10,351.51 per day until paid in full.  (Award, Ex. 1, 8:14-15; 9:14-17).

17.     Having obtained complete relief in its favor, and pursuant to the PCG, Lendlease petitioned the Arbitrator for its attorneys' fees and costs pursuant to Section 2(c) of the Parent Company Agreement.  Respondent Oceanwide submitted an opposition, and Lendlease submitted a reply.  In issuing the final award, the Arbitrator awarded Lendlease its attorney's fees and costs incurred in the arbitration in the amount of $141,412.16.

18.     The Arbitrator also determined that "[t]he administrative fees of the American Arbitration Association totaling $12,844.00 and the compensation and expenses of the arbitrator totaling $15,762.50 shall be borne by Respondent Oceanwide," and ordered Respondent Oceanwide to reimburse Lendlease the sum of $20,725.25, which represents the portion of said fees and expenses in excess of the apportioned costs previously incurred by Lendlease.  (Award, 9:20-24).

19.     These amounts (the principal amount of $38,440,000; the interest through November 12, 2020 in the amount of $1,746,849.81; the attorney's fees incurred in the arbitration in the amount of $141,412.16; and the administrative fees in the amount of $20,725.25) total $40,348,987.22. Interest continues to accrue at a rate of 10% until final payment, for a daily rate of $10,351.51.

20.     The American Arbitration Association served all parties with a copy of the Final Award on November 24, 2020.  A true and correct copy of the transmittal is attached hereto as **Exhibit 3**.

21.     The Final Award is in all respects proper, and there are no legitimate grounds for Respondent Oceanwide to contest the Final Award.  Lendlease is thus entitled to an order confirming the Final Award and entry of a judgment thereon.

## PRAYER FOR RELIEF

Lendlease respectfully requests that the Court:

A.     Enter an order confirming the Final Award in all respects, as authorized by Section 9 of the Federal Arbitration Act;

B.     Enter a judgment against Respondent Oceanwide and in favor of Lendlease that conforms to the Final Award, pursuant to 9 U.S.C. § 13, including interest as provided in the Final Award through and including the date the Final Award is fully and finally paid;

C.     Award Lendlease its costs, disbursements and attorneys' fees incurred in its enforcement of its rights under the PCG pursuant to Section 2(c) of the PCG and California law; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-8-

D.     Grant such other relief as the Court deems just and proper.

DATED:  November 24, 2020

PERKINS COIE LLP

By: */s/ Meredith A. Jones-McKeown*

Meredith A. Jones-McKeown, Bar
No. 233301
MJonesMcKeown@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com

Attorneys for Petitioner
Lendlease (US) Construction Inc.

VERIFIED PETITION TO CONFIRM ARBITRATION AWARD (9 U.S.C. § 9)

**VERIFICATION OF LENDLEASE (US) CONSTRUCTION INC.**

I, Joe Wathen, declare as follows:

I currently the Principal in Charge of the Los Angeles Construction Business of Claimant Lendlease (US) Construction Inc. ("Lendlease"), petitioner in this proceeding, and am the Project Executive of the Oceanwide Project.  I am authorized to make this verification on behalf of Lendlease; I have read this Verified Petition to Confirm Arbitration Award and I am familiar with its contents and that the matters and things contained in it are true based on my own knowledge.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct

Executed in Glendale, California on November 24, 2020.

_____

Joe Wathen

VERIFIED PETITION TO CONFIRM ARBITRATION AWARD (9 U.S.C. § 9)

# EXHIBIT 1

EXHIBIT 1
Page 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMERICAN ARBITRATION ASSOCIATION

FAST TRACK CONSTRUCTION DISPUTES

| | |
|---|---|
| LENDLEASE (US) CONSTRUCTION INC.,<br><br>             Claimant,<br><br>    v.<br><br>CHINA OCEANWIDE HOLDINGS LIMITED,<br><br>           Respondent. | AAA Case No. 01-20-0015-2299<br><br>**FINAL ARBITRATION AWARD** |

1       This Arbitration is administered by the American Arbitration Association (AAA)

2   pursuant to its Construction Industry Fast Track Arbitration Rules, as modified by the

3   terms of the Parent Company Guarantee dated March 5, 2020 between Claimant

4   Lendlease (US) Construction Inc. ("Lendlease") and Respondent China Oceanwide

5   Holdings Limited ("Oceanwide") (the "Parent Company Guarantee"), and the substantive

6   law of the State of California. The Arbitrator designated by AAA is John Paige Carpenter.

7   The Arbitration was conducted through the submission of written evidence and argument

8   between October 13, 2020, when Lendlease's demand and accompanying declarations

9   were filed (collectively, the "Demand"), and November 3, 2020, when all evidence was

10   deemed submitted.  Lendlease appeared through Meredith Jones-McKeown of Perkins

11   Coie LLP, and Oceanwide appeared through John Foust of Ralls Gruber & Niece. No

12   witnesses were called. The parties rested after confirming that their presentation of

13   evidence was complete and having had a full and fair opportunity to present their cases

14   and evidence in support thereof. An Interim Award was issued on November 13, 2020.

15       Pursuant to the terms of the Parent Company Guarantee and confirmed by the

16   Arbitrator's October 30, 2020 Ruling on Lendlease's Motion to Confirm Limited Scope of

17   Arbitrator's Jurisdiction and Seek Issuance of Award without Further Hearing, the sole

18   issue to be determined by the Arbitrator in this fast track arbitration, and the sole issue

19   determined herein, is whether payment of the Funding Schedule Payments as defined in

20   the Parent Company Guarantee was made in accordance with the Parent Company

21   Guarantee. In issuing this Award, the Arbitrator carefully considered the written

22   testimony of declarants, the exhibits offered and admitted, and the parties' written

23   submissions, even though such evidence may not be specifically referred to in this Award.

24       By the Interim Award, the merits of the case are decided except that the Arbitrator

25   retained jurisdiction to hear and rule upon Lendlease's submission of its application for

26   attorneys' fees and costs, and have incorporated this Interim Award into a Final Award.

27   This Final Award is in full resolution of all claims submitted in this arbitration. All claims

28   not expressly granted herein are hereby denied for purposes of this limited arbitration.

-1-

FINAL ARBITRATION AWARD
Case No. 01-20-0015-2299

EXHIBIT 1
Page 13

Nothing herein shall affect the parties' contentions or claims respecting future arbitrations or other proceedings among Lendlease, Oceanwide, or Oceanwide Plaza LLC ("OW-California") except as specifically referenced herein.

## I.   PROCEDURAL HISTORY AND PRIOR ORDERS

This Arbitration was commenced by Lendlease's demand for arbitration and accompanying declarations (collectively, the "Demand") which was filed on October 13, 2020. In this Arbitration, Lendlease sought the immediate enforcement of Oceanwide's obligation to make $54,440,000 in in three installment payments pursuant to a schedule attached to the Parent Company Guarantee between April and June 2020 (the "Funding Schedule Payments"). Following the execution of the Parent Company Guarantee, Oceanwide was required to make three (3) Funding Schedule Payments, each for a certain amount and by a date certain. Lendlease initiated this Arbitration after Oceanwide failed to make these payments as described herein. Concurrent with this Demand, Claimant Lendlease submitted evidence supporting its claims through the declarations of Paul Walsh, Joe Wathen, and Oliver Gold, and various documents attached thereto.

On October 26, 2020, Oceanwide filed its Answer to Claimant's Demand for Arbitration of Breach of Guarantee ("Answer"). In that pleading, Oceanwide stated "[f]or the purposes of this Arbitration, [Oceanwide] does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand." (Answer, at 4). Accordingly, the *prima facie* elements of Lendlease's Demand are wholly undisputed and supported by competent evidence. Oceanwide raised two requests of the Arbitrator: first, it sought an accounting of the Funding Schedule Payments to determine "how much, on a subcontractor-by-subcontractor basis, remains due and owing." (*Id.* at para. 3d.) Second, Oceanwide argued that Lendlease "should be required to establish that it maintained a valid construction license at all times during the Project." (*Id.* heading I.B.) Lendlease contended these issues were outside the jurisdiction of the arbitrator.

On October 28, 2020, Lendlease filed a Motion to Confirm the Limited Scope of the Arbitrator's Jurisdiction and to seek issuance of an arbitration award without a further

EXHIBIT 1
Page 14

hearing.  In support of that motion, Lendlease submitted the Supplemental Declaration of Joe Wathen on the topic of licensure.  Oceanwide filed its opposition to that motion on October 29, 2020.  Lendlease filed a reply via email on October 30, 2020.  The Arbitrator found that the issues raised by Oceanwide concerning subcontractor payment and contractor licensing were construction-related issues and outside the jurisdiction of the Arbitrator under the terms of the PCG, and therefore not subject to this Arbitration.

Lendlease's motion was granted on October 30, 2020.  Accordingly, the scope of the Arbitration hearing was limited to the sole issue of whether Oceanwide made the Funding Schedule Payments in accordance with the Parent Company Guarantee. The Arbitrator's Decision on Lendlease's Motion re: Limited Scope of Arbitrator's Jurisdiction (dated October 30, 2020) is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

On its sole claim for breach of the Parent Company Guarantee, Lendlease seeks the unpaid amount of  $38,440,000, plus attorneys' fees and costs in an amount to be determined post-award, and pre-judgment and post-judgment interest at the statutory rate of 10 percent per annum.

## II.   SUMMARY OF THE EVIDENCE

**A.    On March 5, 2020, Oceanwide and Lendlease executed the Parent Company Guarantee. Walsh Decl., Ex. A (the "PCG").  The Evidence on Lendlease's Claim for Breach of the Parent Company Guarantee by Oceanwide**

Lendlease's claim and supporting evidence was submitted by way of its Demand and supporting Declarations of Paul Walsh, Joe Wathen, and Oliver Gold, all of which were submitted to AAA on October 12, 2020, and the Supplemental Declaration of Joe Wathen, submitted on October 28, 2020.

### 1.    Terms of the Parent Company Guarantee.

Under the terms of the Parent Company Guarantee, Oceanwide "absolutely, unconditionally and irrevocably guarantee[d] to [Lendlease], as a primary obligor and not merely as a surety, the prompt and complete payment when due of each and every

Funding Schedule Payment, without setoff, counterclaim, or defense of any nature whatsoever." PCG ¶ 2(b). Oceanwide further "acknowledge[d] its obligations to make such Funding Schedule Payments and acknowledge[d] that it is not entitled to any further notice or cure periods with respect to any such payments." *Id.*

With respect to the Funding Schedule Payments, Oceanwide promised to pay:

      a.    $10,000,000 on April 15, 2020;

      b.    $20,000,000 on May 15, 2020; and

      c.    $24,440,000 on June 15, 2020 (PCG, Ex. A).

Oceanwide further promised that the Parent Company Guarantee would "remain[] in full force and effect" and would be "binding upon [Oceanwide]" until the Funding Schedule Payments have been paid in full. PCG ¶ 6(c). The parties agreed that "[e]xcept by written agreement by [Oceanwide] and [Lendlease], the obligations of the [Oceanwide] under this Guarantee will remain in effect and will not be diminished or impaired, notwithstanding: (a) any withdrawal of any demand by [Lendlease] for payment or performance by [Oceanwide] of payments due under the Funding Schedule; (b) any amendment, extension, modification or waiver of any Obligations," including the Funding Schedule Payments; or (c) "any compromise by [Lendlease] of any Obligations," including the Funding Schedule Payments. PCG ¶ 5(a)-(c).

The parties also agreed that "[n]o provision of this Guarantee may be waived, amended, supplemented or otherwise modified, except by written instrument signed by [Oceanwide] and [Lendlease]." PCG ¶ 11(a).   At no time did Lendlease and Oceanwide agree to amend the terms of the Parent Company Guarantee or the Funding Payment Schedule in accordance with those terms. *See* Walsh Decl. ¶ 13.   Demand at ¶ 30 Oceanwide did not dispute the factual allegations contained within Paragraphs 1 through 58 of Lendlease's Demand", while purportedly claiming that "nothing in this Answer— including but not limited to the foregoing sentence—is intended to be an admission or a concession of any allegation set forth in the Demand." Answer at 4.

### 2. Prepayments.

Pursuant to its separate promise to prepay monthly operating costs, OW-California made payments to Lendlease totaling $ 3,952,404.[1] It is undisputed that none of these prepayments offset or count towards the Funding Schedule Payments under the Parent Company Guarantee. *See* PCG, ¶ 2(b) (defining Funding Schedule Payments); *see also* Walsh Decl., Exs. B & C.

### 3. Oceanwide failed to timely make the first Funding Schedule Payment.

On April 15, 2020, the first Funding Schedule Payment in the amount of $10 million was due. PCG, Ex. A. On April 14, 2020, OW-California wired $6 million to Lendlease. Walsh Decl., ¶ 8 & Ex. E. It is undisputed that this $6 million was intended to partially satisfy Oceanwide's April 15th Funding Schedule Payment obligation. *Id.* ¶ 8.

On May 8, 2020, OW-California wired $4 million to Lendlease.  This payment was intended to satisfy the remainder of Oceanwide's April 15th Funding Schedule Payment obligation. *Id.* ¶ 14, Ex. G.  The May 8, 2020 payment was untimely.  Demand at ¶¶ 21-31. Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand". Answer at 4.

### 4. Oceanwide fails to make the second Funding Schedule Payment.

On May 15, 2020, the second Funding Schedule Payment in the amount of $20 million was due. PCG, Ex. A. Oceanwide failed to make the second Funding Schedule Payment on time and in full. Walsh Decl. ¶ 19.

On May 29, 2020, OW-California wired $6,784,388 to Lendlease. *Id.* ¶ 20 & Ex. 1. It is undisputed that $6 million of this amount was intended to partially satisfy Oceanwide's May 15th Funding Schedule Obligation.  Walsh Decl., ¶ 20.  The balance of the payment was made to prepay monthly operating costs, and did not count toward the

---

[1] On March 20, 2020, OW-California paid $1,215,000. Wathen Decl., ¶ 2(a) & Ex. 1.  On May 29, 2020, OW-California paid $754,388. Walsh Decl. ¶ 20 & Ex. 1.  On July 2, 2020, OW-California paid $849,895. Wathen Decl. ¶ 2(b) & Ex. 2.  On August 11, 2020, OW-California paid $1,030,372. Id. ¶ 2(c) & Ex. 1.  On August 14, 2020, OW-California paid $102,749. Id. ¶ 2(d) & Ex. 1.

-5-

FINAL ARBITRATION AWARD
Case No. 01-20-0015-2299

EXHIBIT 1
Page 17

Funding Schedule Payments.  It is undisputed that Oceanwide did not make any additional payments to fulfill the May 15 Funding Schedule Payment.  Walsh Decl., ¶ 20.  Demand at ¶¶ 32-40. Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand". Answer at 4.

### 5.  Oceanwide fails to make the third Payment.

On June 15, 2020, the third Funding Schedule Payment of $24,440,000 came due. PCG, Ex. A. Oceanwide failed to make that payment. Walsh Decl. ¶ 22. Demand at ¶ 41 Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand". Answer at 4.   On July 14, 2020, Han Xiaosheng, Chairman, China Oceanwide Holdings Limited conceded that Oceanwide was in "arrears" on its payments. Walsh Decl., ¶ 24 & Ex. J. Oceanwide did not make two additional payments of $5 million it had promised to make in correspondence between the parties, *Id.* ¶¶ 21, 23, 26.  Oceanwide submitted no evidence of any further payments being made.  Demand at ¶¶ 45-46. Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand". Answer at 4.

Oceanwide is therefore entitled to credit for only $16 million in payments towards the Funding Schedule Obligations.  Oceanwide currently owes $38,440,000 under the terms of the Parent Company Guarantee's Funding Schedule. Walsh Decl., ¶¶ 8, 14, 20 and PCG, Ex. A. Demand at ¶¶ 45-46.  Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand".  Answer at 4. No "written agreement of [Oceanwide] and [Lendlease]" authorized Oceanwide's departure from the Funding Schedule or otherwise excused it from making the Funding Schedule Payments on time and in full. PCG ¶¶ 5, 11(a).

On September 22, 2020, pursuant to paragraphs 10 and 13 of the Parent Company Guarantee, Lendlease sent Oceanwide notice of non-payment and that it would commence the instant expedited arbitration proceedings before the American Arbitration Association in Los Angeles, California. Walsh Decl. ¶ 28 & Ex. K.  Demand at ¶¶ 48-49. Oceanwide "does not dispute the factual allegations contained in Paragraphs 1 through 58 of

-6-

Lendlease's Demand". Answer at 4

As discussed above, on October 26, 2020, Oceanwide filed its Answer to Lendlease's Demand, and stated, "[f]or the purposes of this Arbitration, [Oceanwide] does not dispute the factual allegations contained in Paragraphs 1 through 58 of Lendlease's Demand," while purportedly claiming that "nothing in this Answer—including but not limited to the foregoing sentence—is intended to be an admission or a concession of any allegation set forth in the Demand." (Answer, at 4). On November 2, 2020, Oceanwide stated that it "do[es] not have any further evidence to submit in this arbitration on the issue of 'whether payment of the Funding Schedule Payments was made in accordance with the Guarantee.' (Email of J. Foust dated, Nov. 2, 2020).

## III. FINDINGS, CONCLUSIONS, AND FINAL AWARD.

To prove its claim for Oceanwide's breach of the Parent Company Guarantee, Lendlease has the burden of establishing by a preponderance of the evidence the following elements: (1) a guarantee contract; (2) default by the borrower; (3) notice to the guarantor of the default; and (4) nonpayment of the debt by the guarantor. *See Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (2011); *Torrey Pines Bank v. Superior Court*, 216 Cal. App. 3d 813, 819 (1989).

The Arbitrator finds and concludes that Lendlease has satisfied its burden of proof on each element on its claim for Oceanwide's breach of the Parent Company Guarantee. Specifically, Lendlease has demonstrated with sufficient evidence, which Oceanwide does not dispute, that Lendlease and Oceanwide entered into the Parent Company Guarantee and that Lendlease has fully performed all of the terms and conditions required on its part to be performed under the Parent Company Guarantee. Lendlease further proved that Oceanwide breached the Parent Company Guarantee by failing to adhere to the agreed upon Funding Schedule by: (1) failing to pay its $10 million April 15, 2020 Funding Schedule Payment on time; (2) failing to pay its $20 million May 15, 2020 Funding Schedule Payment in full and on time; and (3) failing to pay its $24,440,000 million June 15, 2020 Funding Schedule Payment in full and on time. The exhibits to the Walsh

1  Declaration further confirm that Lendlease provided notice to Oceanwide of its defaults
2  under the Parent Company Guarantee, although the Parent Company Guarantee itself does
3  not require such notice. And it is undisputed that as a direct and proximate result of
4  Oceanwide's breach of the Parent Company Guarantee, Lendlease is owed $38,440,000.

5  On that amount, Lendlease is entitled to pre-and post-judgment interest thereon at
6  the statutory rate.

7  California Civil Code section 3289 provides:

8  (a)  Any legal rate of interest stipulated by a contract remains chargeable after a
9       breach thereof, as before, until the contract is superseded by a verdict or other
10      new obligation.

11  (b)  If a contract entered into after January 1, 1986, does not stipulate a legal rate of
12       interest, the obligation shall bear interest at a rate of 10 percent per annum
13       after a breach.

14  The Parent Company Guarantee does not stipulate a rate of interest, and interest
15  therefore accrues at 10% per annum on the unpaid amounts.

16  Oceanwide argues that the pre-judgment interest rate, citing Civil Code section
17  3289 (a) and *Granite Construction Co. v. American Motorists Ins. Co.*, 29 Cal.App.4th
18  658 (1994) should be 3% per annum, which Oceanwide represents is the rate specified in
19  the construction agreement between Lendlease and OW-California. (Email of J. Foust,
20  Nov. 6, 2020). It is uncontroverted that no provision of the PCG may be "supplemented or
21  otherwise modified, except by written instrument signed by Guarantor and Guaranteed
22  Party." PCG ¶ 11(a). The construction agreement is not at issue in this Arbitration, nor
23  can any of its terms supplement or otherwise amend the PCG. It is also uncontroverted
24  that the PCG does not provide a rate of interest. Where a contract is silent on the rate of
25  interest chargeable, the applicable rate of prejudgment interest is 10%. *Copart, Inc. v*
26  *Sparta Consulting, Inc.*  (2018) 339 F. Supp. 3d 959. The decision in *Granite*
27  *Construction Co.* involved a payment bond surety and a subcontractor and the applicable
28  interest rate under the bond which was silent. The court's decision to apply the

-8-

construction contract interest rate to the bond was based in part on the court finding that the purpose of the bond was to provide recourse to those under the construction contract. Here there is no such connection.

The Parent Company Guarantee also provides for an award to Lendlease of its "reasonable expenses (including, without limitation, reasonable fees and disbursements of counsel)" paid or incurred by Lendlease "in enforcing any of its rights under this Guarantee." PCG ¶ 2(c).

Based on the foregoing, I John Paige Carpenter, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, make the following Final Award:

(1)     Claimant Lendlease's claim against Oceanwide for breach of the Parent Company Guarantee is GRANTED, and Lendlease is entitled to judgment in its favor.

(2)     Lendlease is entitled to an award of the full amount of unpaid balance of the Funding Schedule in the sum is $38,440,000.  Interest has accrued at the statutory rate in the amount of $1,746,849.81 through November 12, 2020. Interest continues to accrue after that date at the rate of $10,351.51 per day.

(3) Lendlease is entitled to an Award of attorney's fees and costs in the amount of $141,412.16.

(4) The administrative fees of the American Arbitration Association totaling $12,844.00 and the compensation and expenses of the arbitrator totaling $15,762.50 shall be borne by Respondent Oceanwide.  Therefore, Oceanwide shall reimburse Lendlease the sum of $20,725.25, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Lendlease.

-9-
FINAL ARBITRATION AWARD
Case No. 01-20-0015-2299

EXHIBIT 1
Page 21

1

2      This Final Award is in full resolution of all claims submitted in this arbitration. All

3  claims not expressly granted herein are hereby denied for purposes of this limited

4  arbitration.

5      Dated this 24th day of November 2020.

6                                    By: _____

7                                         John Paige Carpenter
                                          Arbitrator
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-

FINAL ARBITRATION AWARD
Case No. 01-20-0015-2299

EXHIBIT 1
Page 22

AMERCIAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| LENDLEASE (US) CONSTRUCTION, INC., | ) ) ) | Case Nos.  01-20-0015-2299 |
| Claimant, | ) ) | |
| and | ) ) ) | **DECISION: MOTION RE: LIMITED SCOPE OF ARBITRATOR'S JURISDICTION** |
| CHINA OCEANWIDE HOLDINGS LIMITED, | ) ) ) | |
| Respondent. | ) ) | |

Pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association and after consideration of the briefs of the Parties and arguments of counsel, the Arbitrator decides as follows with respect to the following:

1.      This is a dispute involving the alleged non-payment of Funding Schedule Payments under the terms of a Parent Company Guarantee. The terms of the subject Parent Company Guarantee provide that such disputes are to be brought under Modified AAA Fast Track Rules and the "sole issue to be decided by the arbitrator will be whether payment of the Funding Schedule Payments was made in accordance with the Guarantee." (Parent Company Guarantee Paragraph 13 (a) (i) (e)). Claimant and Guaranteed Party Lendlease contends that Respondent and Guarantor China Oceanwide Holdings Limited failed to make payment under the Funding Schedule in accordance with the Guarantee. (Demand for Arbitration of Breach of Guarantee, pp. 6-11). Respondent and Guarantor Oceanwide Holdings does not refute that it failed to make a Funding Schedule Payment in accordance with the Guarantee.

2.      Respondent and Guarantor Oceanwide Holdings argues that "in order to prevent unjust enrichment and to ensure that the intent of the PGA is enforced, China Oceanwide asks the Arbitrator to perform an accounting of the Funding Schedule Payments…" More particularly, Respondent and Guarantor Oceanwide Holdings requests that the Arbitrator determine, "how much, on a subcontractor-by-subcontractor basis, remains due and owing." (Answer to Claimant's Demand for Arbitration of Breach of Guarantee by China Oceanwide Holdings Limited, p. 2 and China Oceanwide's Opposition to Lendlease Motion to Reduce the Scope of

EXHIBIT 1
Page 23

the Arbitration, pp. 2-4). Respondent and Guarantor Oceanwide Holding's request for the Arbitrator to delve into the details of construction payments to subcontractors on a construction project where non-party Oceanwide California is the contracting party, is beyond the purview of this Arbitrator's express and plain authority limited under the terms of the Parent Guarantee, Paragraph 13 (a) (i) (e).

3. Respondent and Guarantor Oceanwide Holdings also raises the argument that Claimant Lendlease "should be required to establish that it maintained a valid construction license at all times during the project". (Answer to Claimant's Demand for Arbitration of Breach of Guarantee by China Oceanwide Holdings Limited, pp. 2-4 and China Oceanwide's Opposition to Lendlease Motion to Reduce the Scope of the Arbitration, pp. 5-8). Claimant and Guaranteed Party Lendlease contends, among other things, that construction licensure is not germane to the Parent Company Guaranty because the Parent Company Guaranty "does not concern the underlying Construction Contract or any obligations or duties that may have arisen under that agreement, including any duty to be licensed". Claimant and Guaranteed Party Lendlease also argues that the cases cited by Respondent for the proposition that Claimant Lendlease in its capacity as the Guaranteed Party under a Parent Company Guarantee must possess a California contractor's license to enforce the Guarantee, are distinguishable because those cases involve a situation where a contractor is seeking to foreclose a security interest like a mechanics lien as opposed to a commercial guarantee. Claimant Lendlease also contends that such issues can be raised in the context of the Construction Contract and through the more robust arbitration process as contemplated and agreed to by the Parties.

4. This case is not a construction case. Construction issues including construction contract licensure (which Claimant Lendlease demonstrates has been in place continuously based on the Contractor's State License Board's License Detail, attached as Exhibit A to the Supplemental Declaration of Joe Wathen, see also Exhibit F, granting a 90-day extension to the 90-day period for replacing a qualifier from the CSLB dated 12/21/18 and Exhibit G letter from CSLB confirming Mr. Wathen passing the necessary exam dated 1/11/19), can be raised by non-party Oceanwide California under the dispute process provided for in the Parent Company Guaranty and the Construction Contract where it is a party. In a like manner, any construction

EXHIBIT 1
Page 24

project payment and accounting issues can also take place in that context and are beyond the jurisdiction of this Arbitrator per the terms of the Parent Company Guarantee.

5. I find that the words "sole issue" as utilized in the Parent Company Guaranty are unambiguous. The "sole issue" that is before me and which I am empowered to decide is whether Respondent and Guarantor Oceanwide Holdings made the Funding Schedule Payments in accordance with the Guarantee. Any award would provide the basis and amount of any damages.

Signed: _____      Date:   October 30, 2020
John Paige Carpenter, Arbitrator

EXHIBIT 1
Page 25

# EXHBIT 2

EXHIBIT 2
Page 26

**PARENT COMPANY GUARANTEE**

**PREAMBLE**

This Parent Company Guarantee ("**Guarantee**") is dated March 5, 2020 (the "**Effective Date**") and is made by:

(a)    **China Oceanwide Holdings Limited**, a company organized and existing under the laws of Bermuda with a registered office at 64/F Bank of China Tower, 1 Garden Road, Hong Kong ("**Guarantor**"); in favor of

(b)    **Lendlease (US) Construction Inc.**, a Florida corporation with its principal place of business located at 200 Park Avenue, New York, New York 10166 ("**Guaranteed Party**").

**RECITALS:**

(a)    **Oceanwide Plaza LLC**, a company organized and existing under the laws of Delaware with its principal place of business located at 865 S. Figueroa Street #3400, Los Angeles, California 90017 ("**Oceanwide California**"), is an indirect subsidiary of Guarantor. Oceanwide California is executing this Guarantee in order to evidence its consent to the provisions of this Guarantee and to evidence its agreement to the provisions of this Guarantee that modify certain of Oceanwide California's rights and obligations under the Construction Contract and other documents referenced below.

(b)    On or about July 19, 2016, Oceanwide California and Guaranteed Party entered into that certain AIA Document A102-2007 Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price (the "**AIA A102**"), along with AIA Document A201-2007 General Conditions of the Contract for Construction (the "**AIA A201**"), along with associated and incorporated documentation including the Drawings and Specifications (collectively, all as amended to date and as may be amended in the future, the "**Construction Contract**"), providing for the construction of a large, mixed use project located in Los Angeles, California to be known as Oceanwide Plaza (the "**Project**").

(c)    On or about July 19, 2016, as part of the negotiations and documentation relating to and constituting the Construction Contract, Oceanwide California and Guaranteed Party entered into that certain Escrow Agreement respecting funding an escrow (the "**Escrow**") for the benefit of Guaranteed Party (the "**Escrow Agreement**"). The Escrow Agreement is part of the Construction Contract as defined above.

(d)    Guarantor and Oceanwide California agree that the payments set forth in Exhibit A hereto (the "**Funding Schedule**"), shall be made as and when due. Those payments specifically set forth on the Funding Schedule are herein referred to collectively as the "**Funding Schedule Payments**" and an individual payment is referred to as a "**Funding Schedule Payment**".

(e)    Oceanwide California is in arrears on payments owed to Guaranteed Party under the Construction Contract. Accordingly, Guaranteed Party alleges that Oceanwide California

147120782 6

EXHIBIT 2
Page 27

has materially breached the Construction Contract such that Guaranteed Party has no obligation to continue performance under the Construction Contract. Guaranteed Party has given notice of its right to terminate the Construction Contract for cause.

(f)     Guarantor is providing this Guarantee to induce Guaranteed Party to agree to a payment of the funds currently owed pursuant to the Funding Schedule.

(g)     Guarantor is willing to provide this Guarantee, and Guaranteed Party is willing to continue its performance of the Construction Contract, only under the terms and conditions set forth in this Guarantee.

## 1.     Defined Terms

Any capitalized term not otherwise defined in this Guarantee will have the same meaning as given to it in the Construction Contract.

In addition to the terms defined in the Preamble above, the following terms will have the following meanings when used in this Guarantee:

"**AAA**" means the American Arbitration Association.

"**AAA Rules**" means the Construction Industry Arbitration Rules issued by the AAA as in effect July 19, 2016.

"**Funding Cap**" is defined in Paragraph 2(e) below.

"**Obligations**" means the Funding Schedule Payments plus all undisputed obligations and undisputed liabilities of Oceanwide California under the Construction Contract and applicable law, subject to the terms and conditions described therein, including without limitation the obligation of Oceanwide California to pay and reimburse Guaranteed Party for all amounts owed through or to Guaranteed Party, including amounts owed to subcontractors of Guaranteed Party for work on the Project, and including without limitation the obligation of Oceanwide California to fund the Escrow in accordance with the Escrow Agreement.

"**Qualified Construction Loan**" means: (i) a fully committed, (ii) bona fide construction loan secured by a Construction Trust Deed as described in Section 8174 of the California Civil Code, (iii) for the construction of the Project, (iv) made to Oceanwide California or to an entity that is a wholly owned subsidiary of Oceanwide California and which is (1) the owner of the Project and (2) in privity of contract under the Construction Contract with the Guaranteed Party, (v) by a recognized commercial lender, unaffiliated with the Guarantor, that is a "construction lender" within the meaning of Section 8006 of the California Civil Code, (vi) for which the borrower has satisfied any minimum equity requirement and any equity maintenance requirement, (vii) is in a principal amount that is sufficient to pay the unpaid balance of the Guaranteed Maximum Price as defined in the Construction Contract and for which all such loan amounts are readily available in the USA, and (viii) for which

2

147120782.6

EXHIBIT 2
Page 28

Guaranteed Party will have Stop Payment Notice rights pursuant to Section 8500 et seq. of the California Civil Code ("**Stop Payment Notice Rights**").

## 2.     Guarantee

(a)     **General Guarantee.**  Subject to the limitations specifically set forth in Paragraph 2(e) of this Agreement, Guarantor absolutely, unconditionally and irrevocably guarantees to Guaranteed Party, as a primary obligor and not merely as a surety, the prompt and complete performance and payment when due by Oceanwide California of the Obligations owed to Guaranteed Party.  This Guarantee is a guarantee of payment and performance and not merely of collection.

(b)     **Funding Schedule Payments.**  Subject to the limitations specifically set forth in Paragraph 2(e) of this Guarantee, Guarantor further absolutely, unconditionally and irrevocably guarantees to Guaranteed Party, as a primary obligor and not merely as a surety, the prompt and complete payment when due of each and every Funding Schedule Payment, without setoff, counterclaim, or defense of any nature whatsoever.  Guarantor acknowledges its obligations to make such Funding Schedule Payments and acknowledges that it is not entitled to any further notice or cure periods with respect to any such payments.

(c)     **Enforcement Fees and Costs.**  Any party to this Guarantee shall pay all reasonable expenses (including, without limitation, reasonable fees and disbursements of counsel) paid or incurred by any other prevailing party to this Guarantee in enforcing any of its rights under this Guarantee.

(d)     **Maximum Liability.**  With the exception of enforcement costs as described in Paragraph 2(c) of this Guarantee, and notwithstanding anything in this Guarantee, the maximum liability of Guarantor in respect of any, or all, Obligations will in no event exceed the lesser of (i) the maximum liability of Oceanwide California under the Construction Contract and applicable law or (ii) the Funding Cap.  This limitation shall in no way reduce, limit, or otherwise affect the duties and obligations of Oceanwide California under the Construction Contract and applicable law.

(e)     **Funding Cap.**  With the exception of enforcement costs as described in Paragraph 2(c) of this Guarantee, and notwithstanding anything else in this Guarantee, the maximum liability of Guarantor in respect of any, or all, Obligations (or stated alternatively, the total of all payments made by Guarantor under this Guarantee) will in no event exceed One Hundred Million U.S. Dollars (USD $100,000,000.00) (the "**Funding Cap**").  For the avoidance of doubt, the Funding Cap will be reduced by the aggregate amount of payments made under the Funding Schedule.

(f)     **Escrow Suspension.**  Any and all obligations associated with the Escrow or the Escrow Agreement, whether on behalf of Guarantor or Oceanwide California, will be suspended during any of the following periods:

(i)     after the Effective Date of this Agreement until such time as Oceanwide California directs Guaranteed Party to remobilize and commence on-site work materially beyond the work taking place in December 2019 and January 2020;

3

147120782.6

EXHIBIT 2
Page 29

(ii)    during such time as a Qualified Construction Loan is in place, which suspension will not take effect until Guarantor and Oceanwide California have provided Guaranteed Party with sufficient notice and information regarding the Qualified Construction Loan to allow Guaranteed Party to assert its Stop Payment Notice Rights; or

(iii)    when Oceanwide California need not maintain the Escrow under the terms and conditions set forth in section 2.2.1 of the AIA A201.

### 3.  Notice to Perform and Cure Period

(a)    In the event Guaranteed Party wants Guarantor to perform under this Guarantee, Guaranteed Party must provide notice to Guarantor of the performance desired as indicated in Paragraph 10 below, after which Guarantor will have seven (7) days to perform as requested by the notice before Guarantor can take any action to enforce this Guarantee.

(b)    Except as set forth in Paragraph 3(c) of this Guarantee, nothing in this Guarantee will grant to Guaranteed Party any right of action against Guarantor, unless:

(i)    Guaranteed Party has given any requisite notices of default to Oceanwide California pursuant to the Construction Contract; and

(ii)    all applicable cure periods, if any, for Oceanwide California to cure such default(s) have expired.

(c)    Nothing in Paragraphs 3(a) or 3(b) of this Guarantee shall affect amounts due pursuant to the Funding Schedule, which amounts shall be paid forthwith on or before the dates specified without further notice or cure periods.

### 4.  No Subrogation; Contribution

(a)    Guarantor will not be entitled to be subrogated to any of the rights of Guaranteed Party against Oceanwide California on account of payments made by Guarantor under this Guarantee.

(b)    Guarantor will not be entitled to seek any contribution from Oceanwide California for payments made by Guarantor under this Guarantee unless and until Guaranteed Party has indefeasibly received Final Payment as defined in the Construction Contract.

### 5.  Amendments, etc. with respect to Obligations

Except by written agreement of Guarantor and Guaranteed Party, the obligations of Guarantor under this Guarantee will remain in effect and will not be diminished or impaired, notwithstanding:

(a)    any withdrawal of any demand by Guaranteed Party for payment or performance by Oceanwide California of payments due under the Funding Schedule;

4

147120782.6

EXHIBIT 2
Page 30

(b)    any amendment, extension, modification or waiver of any Obligations;

(c)    any compromise by Guaranteed Party of any Obligations and any other guarantee in respect of them; or

(d)    any insolvency, bankruptcy, liquidation or dissolution of Oceanwide California.

**6.    Guarantee Continuing; Waiver of Rights; Termination**

(a)    This Guarantee will be construed as a continuing guarantee of the performance and payment of all Obligations owing to Guaranteed Party by Oceanwide California, and not a guarantee of collection.  Guarantor waives diligence, presentment and protest with respect to all Obligations.

(b)    Except as described in Paragraph 3(a) of this Guarantee with respect to notices required under the Construction Contract, when pursuing its rights and remedies under this Guarantee against Guarantor, Guaranteed Party may, but will be under no obligation to, pursue such rights and remedies as it may have against Oceanwide California, until all the Obligations owing to Guaranteed Party have been paid in full.  Any failure by Guaranteed Party to pursue any rights or remedies against Oceanwide California will not relieve Guarantor from its obligations under this Guarantee.

(c)    This Guarantee:

(i)    remains in full force and effect; and

(ii)    is binding upon Guarantor or its respective successors or assigns,

until the first of the following events occurs:

(w)    all payments due under the Funding Schedule have been indefeasibly paid in full and the Funding Cap has been reached;

(x)    the following conditions are all met:  (A) an amount sufficient to cover all obligations then remaining under this Guarantee are placed into either (I) the Escrow or (II) an irrevocable escrow; (B) whether escrow (I) or (II) is utilized, the escrow will be in form and substance reasonably acceptable to Guaranteed Party (including the identity and location of the escrow holder) for which Guaranteed Party has exclusive rights to payment from; and (C) funds in the amount of all remaining Funding Schedule Payments have been released to Guaranteed Party concurrently with, or prior to, the termination of this Guarantee;

(y)    Guaranteed Party is the sole beneficiary of an irrevocable letter of credit, in form and substance reasonably acceptable to Guaranteed Party (including with respect to the identity of the issuer) and which may be drawn down at a bank branch located in New York state, in an amount sufficient to cover all obligations then remaining under this Guarantee and with provisions allowing all remaining Funding Schedule Payments to be immediately drawn upon by Guaranteed Party; or

5

147120782.6

EXHIBIT 2
Page 31

(z)     all payments due under the Funding Schedule have been indefeasibly paid in full and a Qualified Construction Loan is in place prior to any notice given under Paragraph 3(a) or Paragraph 13(a) unless any resulting dispute related to the notice given has been finally disposed of and Guaranteed Party fully satisfied.

## 7.     Reinstatement

This Guarantee will automatically, without the necessity of further documentation, be reinstated if any payment of an Obligation must be returned by Guaranteed Party on account of the insolvency, bankruptcy, administration, dissolution or liquidation of Oceanwide California or Guarantor.

## 8.     Payment

All Obligations owing to or on behalf of Guaranteed Party hereunder, including payments required under the Funding Schedule or the Escrow Agreement, will be paid in United States Dollars (USD$).

## 9.     Guarantor's Representations and Warranties

Guarantor represents and warrants that:

(a)     it is duly organized and validly existing under the laws of its jurisdiction of organization and has the power, authority and legal right to conduct its current business;

(b)     it has the power, authority and the legal right to execute, and perform its obligations under, this Guarantee;

(c)     this Guarantee constitutes a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms but subject to:

(i)     relevant laws affecting creditors' rights;

(ii)     general equitable and common law principles; and

(iii)     an implied covenant of good faith;

(d)     the execution, delivery and performance of this Guarantee will not:

(i)     contravene any applicable law, rule or regulation, its constitutional documents or any agreement binding upon it (or its assets);

(ii)     contravene any judgment, order, decree, agreement or undertaking applicable to Guarantor; or

(iii)     result in, or require, the imposition or creation of any lien on any of Guarantor's assets in any material respect;

6

147120782.6

EXHIBIT 2
Page 32

(e)    there are no laws in effect in the jurisdiction where Guarantor is organized that limit its maximum liability, except for laws limiting the ability of Guarantor to incur liabilities that render it insolvent, unable to pay its debts or with insufficient capital, and such laws do not affect Guarantor's ability to enter into and perform this Guarantee as of the date hereof;

(f)    it is not entitled to immunity from judicial proceedings or arbitration proceedings in the United States and, to the extent any such proceedings are commenced in accordance with this Guarantee and with the Construction Contract, it will and hereby does waive any such immunity;

(g)    Guarantor is indirectly the 100% equity owner of Oceanwide California, and will benefit materially from Oceanwide California's successful completion of the Project; and

(h)    Guarantor is in a position through its ownership interest in Oceanwide California to obtain such financial and other information as it may desire in order to analyze and understand the status (financial and otherwise) of Oceanwide California and the Project, has performed such investigation as it deems appropriate, and has obtained such financial and other information as it deems necessary in order to evaluate the wisdom of entering into this Guarantee. Guarantor assumes full responsibility for such due diligence and for Guarantor's obligation to continue to keep informed of all matters which may affect Oceanwide California or the Project. Guarantor has not relied on any representations or warranties from Guaranteed Party in determining whether to enter into this Guarantee, and agrees Guaranteed Party has no obligation whatsoever to provide any information to Guarantor respecting Oceanwide California or the Project, whether now or in the future.

## 10.    Notices

(a)    To be effective, all notices to and demands on any party to this Guarantee required by or made under this Guarantee must be in writing, with all delivery charges prepaid, to the addresses set forth below on the signature page by one of the following methods:

    (i)    if notice is personally delivered to a party's address set forth below on the signature page, notice will be deemed received on the date of personal delivery;

    (iii)    if notice is sent by overnight delivery, notice will be deemed received on the date of delivery; or

    (ii)    if notice is sent by registered or certified mail, notice will be deemed received four (4) business days after the date of posting by the applicable postal authority.

(b)    Any party may change its address for notices and demands by giving notice as provided in this Paragraph 10.

7

147120782.6

EXHIBIT 2
Page 33

**11.   Amendments in Writing; No Waiver; Cumulative Remedies**

    (a)    No provision of this Guarantee may be waived, amended, supplemented or otherwise modified, except by written instrument signed by Guarantor and Guaranteed Party.

    (b)    Guaranteed Party will not, by any act (except by a written instrument pursuant to Paragraph 11(a) of this Guarantee) or by any delay or omission be deemed to have waived (in whole or in part) any right or remedy under this Guarantee.

    (c)    No failure to exercise, or any delay in exercising, by Guaranteed Party of any right, power or privilege will operate as a waiver.

    (d)    A waiver by Guaranteed Party of any right or remedy will not be construed as a bar to any right or remedy that Guaranteed Party would otherwise have on any future occasion.

**12.   Currency Indemnification**

The obligations of Guarantor under this Guarantee for an amount due to Guaranteed Party will, notwithstanding any judgment in a currency (the "**judgment currency**") other than the currency in which such amount is denominated (the "**original currency**"), be discharged only to the extent that on the second business day following receipt by Guaranteed Party of any sum in the judgment currency, Guaranteed Party may, in accordance with normal banking procedures, purchase the original currency with the judgment currency; provided that if the amount of the original currency so purchased is less than the amount originally due to Guaranteed Party in the original currency, Guarantor agrees, as a separate obligation and notwithstanding any such judgment, to pay to Guaranteed Party the amount of such loss within ninety (90) days after demand.

**13.   Dispute Resolution; Governing Law**

    (a)    **Mandatory Expedited Binding Arbitration.**  Except as set forth in Paragraph 13(c) of this Guarantee, Guarantor, Oceanwide California and Guaranteed Party irrevocably and unconditionally agree to resolve any dispute arising under, regarding, or related to this Guarantee through arbitration before the AAA in accordance with the Fast Track Procedures of the AAA Rules ("**Fast Track Rules**"), as modified below.

        (i)    For claims and disputes related to non-payment of the Funding Schedule Payments, the parties agree to utilize the Fast Track Rules with the following modifications:

            a.    The dollar limits specified in the Fast Track Rules shall not apply.

            b.    The parties will begin the arbitrator appointment process immediately after the effective date of notice under Section 10 respecting non-payment and a demand for arbitration. If the parties do not reach agreement on arbitrator selection within two business

8

EXHIBIT 2
Page 34

(2) days, AAA will appoint an arbitrator on the third (3rd) business day.

c.   The arbitration shall be completed within fourteen (14) days of the effective date of notice under Section 10 of the demand for arbitration. All other deadlines will be adjusted to ensure the completion of the arbitration within this timeframe.

d.   The arbitrator's award will be issued within five (5) days of the completion of the hearing.

e.   The sole issue to be decided by the arbitrator will be whether payment of the Funding Schedule Payments was made in accordance with the Guarantee. The arbitrator will have sole discretion as to whether to decide the matter on the papers or to take testimony, but the unavailability of witnesses shall not provide grounds for a continuance.

f.   Both parties prospectively agree to waive any right to seek a continuance or extension of the arbitration hearing.

(ii)   For all other claims and disputes, the parties agree to utilize the Fast Track Rules with the following modifications:

a.   The dollar limits specified in the Fast Track Rules shall not apply.

b.   The sole issue to be decided by the arbitrator will be whether Guarantor is obligated to pay for the underlying claim in accordance with the terms of this Guarantee. Substantive issues determined within any separate arbitration between Oceanwide California and Guaranteed Party (an **"Underlying Arbitration"**) will not be relitigated within the arbitration between Guaranteed Party and Guarantor. Guarantor prospectively stipulates that it will not contest the factual or legal conclusions in any award issued in an Underlying Arbitration.

c.   Both parties prospectively agree to waive any right to seek a continuance or extension of the arbitration hearing other than extensions permitted under the Fast Track Rules.

(iii)   Both parties agree that any award issued by an arbitrator shall be enforceable within the courts of Hong Kong pursuant to the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as amended to date (the **"New York Convention"**), including while any appeal from the arbitration award is pending, subject only to the limited enforceability exceptions set forth in the New York Convention.

(b)   [Reserved]

9

147120782.6

EXHIBIT 2
Page 35

(c) **Emergency Court Relief.**   Notwithstanding the arbitration provisions in Paragraph 13(a) of this Guarantee and notwithstanding the arbitration provisions in the Construction Contract, nothing shall prevent a party from requesting emergency relief from a court of competent subject matter jurisdiction located in Los Angeles, California.  Each of the parties irrevocably submits to the personal jurisdiction and venue of such courts for such purpose and waives any defense of forum non conveniens or similar defense.

(d) **Venue.**   Any arbitration shall be conducted in Los Angeles, California or other location as may be agreed upon by the parties to this Guarantee.  Any award shall be binding upon issuance in accordance with Article III of the New York Convention and shall be enforceable in accordance with Article IV of the New York Convention without further action in the United States.  The exclusive venue for any motion or other proceeding by Guaranteed Party or Guarantor to vacate, modify, appeal, or otherwise change any arbitration award, shall be the United States District Court in the Central District of California.  Any such motion or proceeding must be filed within ten business (10) days of the issuance of the award, or will be waived.

(e) **Governing Law.**   This Guarantee shall be governed by the laws of the State of California, without regard to conflicts of law principles.

(f) **Service of Process.**   Guarantor agrees that service of process in any such action or proceeding permitted hereunder may be effected by mailing a copy by registered or certified mail, postage prepaid, to Guarantor at the notice address provided for in Paragraph 10 of this Guarantee, coupled with an email copy sent to Ken Choi at ken.choi@oceanwideus.com.  Guarantor further agrees that any such service of process may be effected by hand delivery or delivery by overnight courier to Oceanwide California at the notice address provided for in Paragraph 10 of this Guarantee, coupled with an email copy to Mr. Choi, and hereby appoints Oceanwide California as its agent for service of process for such purpose.  Nothing herein will affect the right of Guaranteed Party to effect service of process in any other manner permitted by law.

(g) **Relation to Construction Contract Dispute Resolution Process.**   With the exception of a good faith dispute with respect to the Funding Schedule Payments, which are unrelated to the resolution of any underlying dispute under the Construction Contract and shall not be stayed under any circumstances, notwithstanding anything in this Guarantee to the contrary, in the event of a good faith dispute between Oceanwide California and Guaranteed Party arising under, regarding, or related to the Construction Contract or any Obligations, then any action on this Guarantee arising under, regarding, or related to that underlying dispute, including but not limited to any arbitration under this Paragraph 13, shall be stayed pending resolution of the underlying dispute under the terms of the Construction Contract.

10

147120782.6

EXHIBIT 2
Page 36

14.     [Intentionally Deleted]

15.     **Waivers of Jury Trial**

TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS
GUARANTEE HEREBY WAIVES TRIAL BY JURY IN ANY PROCEEDINGS BROUGHT
BY ANY OTHER PARTY TO THIS GUARANTEE IN CONNECTION WITH ANY MATTER
ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTEE OR THE
OBLIGATIONS.    THE PROVISIONS OF THIS CLAUSE SHALL SURVIVE THE
TERMINATION OF THIS DEED.

16.     **Successors and Assigns; Representatives**

This Guarantee may not be assigned without the written consent of the parties hereto, provided
that Guaranteed Party may assign this Guarantee in conjunction with a transfer of the Construction
Contract to the extent permitted thereunder.  This Guarantee will be binding upon Guarantor and
its permitted successors and assigns, and will inure to the benefit of Guaranteed Party and its
permitted successors and assigns.

17.     **Partial Invalidity**

If any provision of this Guarantee is held invalid, unenforceable or illegal for any reason, this
Guarantee will remain otherwise in full force apart from such provision which will be deemed
deleted.

18.     **Guarantor Waivers**

In addition to Guarantor's other waivers set forth in this Guarantee:

   (a)    If and to the extent applicable, Guarantor waives all rights and defenses described
          in California Civil Code Section 2856(a), including the following: (a) rights of
          subrogation, reimbursement, indemnification, and contribution and any other rights
          and defenses that are or may become available to Guarantor or by reason of
          California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433, (b) any
          rights or defenses Guarantor may have in respect of his or her obligations as a
          guarantor or other surety by reason of any election of remedies by Guaranteed
          Party, and (c) any rights or defenses Guarantor may have because the Obligations
          are or may become secured by real property.

   (b)    Guarantor waives all rights and defenses arising out of an election of remedies by
          Guaranteed Party, even though that election of remedies may effect certain of
          Guarantor's rights of subrogation and reimbursement against the principal in the
          event the Obligations are or may become secured by real property.

Executed as of the date first stated above.

11

EXHIBIT 2
Page 37

**CHINA OCEANWIDE HOLDINGS LIMITED**, a
Bermuda limited company ("Guarantor")

By: _____
Name: _____Han Xiaosheng_____
Title: _____Chairman_____
Address for Notices:
64/F Bank of China Tower
1 Garden Road
Hong Kong

**LENDLEASE (US) CONSTRUCTION INC.**, a Florida
corporation ("Guaranteed Party")

By: _____
Name: _____DENIS (HICKEY)_____
Title: _____CEO_____
Address for Notices:
200 Park Avenue
New York, NY  10166

**CONSENTED AND AGREED:**

**OCEANWIDE PLAZA LLC**, a Delaware limited
liability company ("Oceanwide California")

By: _____
Name: Thomas Feng
Title: CEO
Address for Notices:
865 S. Figueroa Street, #3400
Los Angeles, CA  90017

12

147120782.6

EXHIBIT 2
Page 38

**EXHIBIT A**

**Funding Schedule**

**(all amounts in USD$)**

| | |
|---|---|
| April 15, 2020 | $10,000,000.00 |
| May 15, 2020 | $20,000,000.00 |
| June 15, 2020 | $24,440,000.00 |

13

147120782.6

EXHIBIT 2
Page 39

# EXHIBIT 3

EXHIBIT 3
Page 40



Michael Powell
Vice President
725 South Figueroa Street
Suite 400
Los Angeles, CA 90017
Telephone: (213)362-1900

November 24, 2020

Meredith Jones-McKeown, Esq.
Perkins Coie, LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Via Email to: mjonesmckeown@perkinscoie.com

John Foust, Esq.
Ralls Gruber & Niece LLP
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Via Email to: jfoust@rallsgruber.com

**Case Number: 01-20-0015-2299**

Lendlease (US) Construction
-vs-
China Oceanwide Holdings Limited
c/o Oceanwide Plaza LLC

Dear Parties:

By direction of the arbitrator, please find enclosed the duly executed Final Award in the above matter. Please remember there is to be no direct communication with the arbitrator. All communication shall be directed to the AAA.

A financial reconciliation has been conducted and each party will receive a separate statement reflecting the amounts due for the arbitrator's incurred compensation. **Payment is due upon receipt of that statement.**

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the American Arbitration Association (the AAA) for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the final award is issued, and regardless of the arbitrator's apportionment of these costs between the parties in the award.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

EXHIBIT 3
Page 41

We appreciate the opportunity to assist you in resolving your dispute. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/
Michael R Powell
Vice President
Direct Dial: (213)362-1900
Email: MichaelPowell@adr.org
Fax: (855)433-3046

Enclosure

cc:     Oliver M. Gold, Esq.
        Ken W. Choi, Esq.
        Daniel A. Cantor
        John Paige Carpenter, Esq.
mp/bs

EXHIBIT 3
Page 42